UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
INA REINSURANCE COMPANY, n/k/a R&Q
REINSURANCE COMPANY,                                          **COMPLAINT**

                              Plaintiff,

          v.

GRANITE STATE INSURANCE COMPANY,
LEXINGTON INSURANCE COMPANY,
RESOLUTE MANAGEMENT, INC., AND
NATIONAL INDEMNITY COMPANY,

                              Defendants.
------------------------------------------------------------X

Plaintiff, INA Reinsurance Company n/k/a R&Q Reinsurance Company ("R&Q Re"), by its attorneys, Rubin Fiorella & Friedman LLP, as and for its Complaint against Defendants, alleges as follows:

### THE PARTIES

1.      R&Q Re is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at Two Logan Square, Philadelphia, Pennsylvania.  R&Q Re is the successor in name to INA Reinsurance Company ("INA Re").

2.      Granite State Insurance Company ("Granite State") was originally incorporated under the laws of the State of New Hampshire.  On July 23, 2015, Granite State was redomesticated to Illinois.  Granite State's principal place of business is located at 175 Water Street, New York, New York.

3.      At all relevant times, defendant Lexington Insurance Company ("Lexington") was and still is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 99 High Street, Boston, Massachusetts.

4.      At all relevant times, defendant Resolute Management, Inc. ("Resolute") was and

still is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3024 Harney Street, Omaha, NE.

5.      At all relevant times, defendant National Indemnity Company ("NICO") was and still is a corporation organized and existing under the laws of the State of Nebraska with its principal place of business located at 3024 Harney Street, Omaha, NE.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs, and because the plaintiff and all of the defendants are citizens of different States.

7.      This Court has personal jurisdiction over Granite State because Granite State is a domiciliary of the State of New York.

8.      This Court has personal jurisdiction over Granite State because Granite State transacts business in the State of New York

9.      This Court has personal jurisdiction over Lexington because Lexington transacts business within the State of New York.

10.     This Court has personal jurisdiction over Resolute because Resolute transacts business within the State of New York.

11.     This Court has personal jurisdiction over NICO because NICO transacts business within the State of New York.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) as this is a diversity action and some of the reinsurance contracts at issue were negotiated in this judicial district and, as such, a substantial part of the events giving rise to the claim occurred in this judicial district.

13.     Venue is proper under 28 U.S.C. § 1391(b)(3), as this is a diversity action, and the

Defendants all transact business in this judicial district and are thus subject to the court's personal jurisdiction with respect to this action.

## BACKGROUND

### The Granite State Policies

14.     Granite State provided excess liability insurance coverage to United States Filter Corporation, et. al. ("United States Filter") pursuant to policy number 6179-1049 providing a limit of liability of $10,000,000 part of $20,000,000 excess of $6,000,000, and covering the period February 1, 1979 to February 1, 1980.

15.     Granite State provided excess liability insurance coverage to United States Filter pursuant to policy number 6180-1940 providing a limit of liability of $5,000,000 part of $25,000,000 excess of $51,000,000, and covering the period February 1, 1980 to February 1, 1981.

16.     Granite State provided excess liability insurance coverage to United States Filter pursuant to policy number 6481-5142 providing a limit of liability of $5,000,000 part of $25,000,000 excess of $51,000,000, and covering the period February 1, 1981 to February 1, 1982.

### The Lexington Policies

17.     Lexington provided excess liability insurance coverage to United States Filter pursuant to policy number 5511412 providing a limit of liability of $8,000,000 part of $20,000,000 excess of $6,000,000, and covering the period February 1, 1979 to February 1, 1980.

18.     Lexington provided excess liability insurance coverage to United States Filter pursuant to policy number 5520262 providing a limit of liability of $8,500,000 part of

$25,000,000 excess of $51,000,000, and covering the period February 1, 1980 to February 1, 1981.

19.     Lexington provided excess liability insurance coverage to United States Filter pursuant to policy number 5522148 providing a limit of liability of $8,500,000 part of $25,000,000 excess of $51,000,000, and covering the period February 1, 1981 to February 1, 1982.

20.     On or about December 1, 1979, United States Filter acquired Riley Stoker Company ("Riley Stoker"), a manufacturer of boilers which allegedly contained asbestos.

21.     In March of 1981, United States Filter was acquired by Ashland Oil Corporation ("Ashland").  As a result of that acquisition, Ashland became an insured under and/or entitled to the coverage benefits provided by the aforementioned excess liability policies issued by Granite State and Lexington to United States Filter.

**The Reinsurance Contracts**

22.     Pursuant to Certificate of Facultative Reinsurance number FRC 025234, INA Re reinsured Granite State policy number 6179-1049, thereby accepting a 10% share of premium and losses properly allocable to said policy. Certificate of Facultative Reinsurance number FRC 025234 provides a limit of liability of $1,000,000 part of $10,000,000.

23.     Pursuant to Certificate of Facultative Reinsurance number FRC 028075, INA Re reinsured Granite State policy number 6180-1940, thereby accepting a 20% share of premium and losses properly allocable to said policy.  Certificate of Facultative Reinsurance number FRC 028075 provides a limit of liability of $1,000,000 part of $5,000,000.

24.     Pursuant to Certificate of Facultative Reinsurance number FRC 033896, INA Re reinsured Granite State policy number 6481-5142, thereby accepting a 20% share of premium

and losses properly allocable to said policy.  Certificate of Facultative Reinsurance number FRC 033896 provides a limit of liability of $1,000,000 part of $5,000,000.

25.     Pursuant to Certificate of Facultative Reinsurance number FRC 024658, INA Re reinsured Lexington policy number 5511412, thereby accepting a 25% share of premium and losses properly allocable to said policy.  Certificate of Facultative Reinsurance number FRC 024658 provides a limit of liability of $2,000,000 part of $8,000,000.

26.     Pursuant to Certificate of Facultative Reinsurance number FRC 029387, INA Re reinsured Lexington policy number 5520262, thereby accepting a 23.529% share of premium and losses properly allocable to said policy.  Certificate of Facultative Reinsurance number FRC 029387 provides a limit of liability of $2,000,000 part of $8,500,000.

27.     Pursuant to Certificate of Facultative Reinsurance number FRC 033895, INA Re reinsured Lexington policy number FRC 5522148, thereby accepting a 23.529% share of premium and losses properly allocable to said policy.   Certificate of Facultative Reinsurance number FRC 033895 provides a limit of liability of $2,000,000 part of $8,500,000.

28.     Subsequent to the issuance of the aforementioned Certificates of Facultative Reinsurance, R&Q Re ultimately succeeded to the rights and obligations of INA Re.

**The Underlying Claims**

29.     Multiple individuals have asserted, and continue to assert, bodily injury claims against Ashland alleging injuries from exposure to asbestos.

30.     Ashland's asbestos liabilities are said to have arisen from its 1981 acquisition of United States Filter, which had previously acquired Riley Stoker.  While on October 1, 1990, Deutsche Babcock AG acquired Riley Stoker from Ashland, Ashland retained the asbestos liabilities.

31.     Ashland sought insurance coverage from Granite State and Lexington for underlying asbestos claims asserted against it and/or its predecessors, United States Filter and Riley Stoker, under the aforementioned excess umbrella liability policies issued by Granite State and Lexington, and other insurance policies issued by other members of the American International Group of Insurance Companies ("AIG Insurers"), as well as by other unaffiliated insurance companies, including Underwriters at Lloyd's of London ("Lloyd's").

32.     In or about 1998, Ashland filed a declaratory judgment action in the State of Kentucky against its insurance carriers, including AIG Insurers, seeking coverage for asbestos-related claims being made against Riley Stoker.

33.     In December, 2003, American Home Assurance Company ("American Home") entered into a coverage in place agreement with Ashland ("CIP"), pursuant to which the AIG Insurers agreed to make payments in a specified manner under their insurance policies in respect of asbestos related claims being made against Riley Stoker.

34.     In 2005, the CIP was amended to add AIG Insurers Granite State and AIU Insurance Company ("AIU") as parties, in that the claim volume was anticipated ultimately to impact the higher excess layers of insurance coverage provided by the policies issued by Granite State and AIU.  A second addendum dated April 28, 2009 added Lexington as a party to the CIP.

35.     Between 2003 and 2011, AIG Insurers made loss and expense payments to or for the benefit of Ashland in accordance with the terms of the CIP.

36.     In or about 2011, as a result of certain corporate transactions and agreements, certain liabilities of certain AIG Insurers, including Granite State and Lexington, were retroactively transferred to NICO.  These liabilities included AIG Insurers' asbestos liabilities. These transactions and agreements have been characterized as a loss portfolio transfer ("LPT").

6

37.     As a result of the LPT, the liabilities of AIG Insurers, including Granite State and Lexington, for the Ashland asbestos related bodily injury claims became reinsured by NICO.

38.     After these corporate transactions and agreements between AIG Insurers and NICO were consummated, the claim handling function in respect of losses applicable to the insurance policies issued by AIG Insurers to United States Filter, which included the continuing administration of the CIP, was delegated and transferred to Resolute.

39.     Upon information and belief, in or about October, 2012, Ashland initiated Arbitration proceedings against AIG Insurers, including Granite State, in accordance with the dispute resolution mechanism provided for in the CIP.

40.     In addition to initiating Arbitration proceedings against AIG Insurers, Ashland initiated Arbitration proceedings against Lloyd's.   Apparently, Lloyd's - - whose legacy insurance liabilities had been transferred into an entity known as Equitas - - through Equitas had entered into corporate transactions with NICO substantially similar to the ones entered into between AIG Insurers and NICO, the consequence of which resulted in NICO reinsuring Equitas and Resolute also assuming claim handling responsibility and continuing administration of a CIP that Lloyd's had also entered into with Ashland.

41.     Also, in October, 2012, Ashland initiated litigation in a Kentucky state court against Resolute and NICO, alleging that Resolute and NICO had engaged in bad faith conduct and had encouraged or caused AIG Insurers and Lloyd's to repudiate their obligations under their respective CIPs, had tortiuously interfered with contractual rights, and had wrongfully induced a breach of those CIPs.

42.     Ashland contended that after taking over administration of the CIP between AIG Insurers and Ashland, Resolute engaged in a course of dealing and pattern and practice of bad

faith, designed to deprive Ashland of the payments to which Ashland was entitled under the CIP.

43.     Ashland further contended that Resolute engaged in such conduct for the purpose of slowing down, reducing and eliminating payments to which Ashland was entitled under the CIP in order that its affiliate NICO could derive additional and substantial investment income on the funds that had been paid to NICO pursuant to the LPT.

44.     On or about January 13, 2015, after an arbitration decision believed to have been in favor of Ashland had been rendered in the Arbitration between Ashland and Lloyd's, AIG Insurers, including Granite State and Lexington, Lloyd's, NICO and Resolute entered into an agreement entitled, Confidential Settlement Agreement ("Settlement"), which among other things, resolved the liability of all defendants to Ashland for the claims asserted against them by Ashland in the Arbitrations and litigation.

45.     Pursuant to the Settlement, NICO, Resolute, AIG Insurers and Lloyd's agreed to pay to Ashland a certain sum in exchange for a release from claims asserted in the Kentucky state court litigation against NICO and Resolute and in the Arbitrations that Ashland had commenced against AIG Insurers and Lloyd's.

46.     Ashland reports in public filings that as a result of the Settlement, it received from the Defendants the total sum of $398 million.

**Resolute Billings to R&Q Re Under the Certificates**

47.     Pursuant to the facultative certificates, R&Q Re agreed to indemnify: (i) Granite State for loss and loss adjustment expenses paid by Granite State which Granite State was legally obligated to pay under its excess liability insurance policies issued to United States Filter; and (ii) Lexington for loss paid by Lexington which Lexington was legally obligated to pay under its excess liability insurance policies issued to United States Filter.

48.     On or about May 18, 2015, Resolute billed R&Q Re for amounts allegedly due under its facultative certificates.

49.     Resolute's billings to the facultative certificates reinsuring the Granite State excess liability policies covering the periods February 1, 1979 to February 1, 1980, February 1, 1980 to February 1, 1981 and February 1, 1981 to February 1, 1982 include charges for defense costs, declaratory judgment expenses and attorneys' fees.

50.     Resolute's total billings to R&Q Re's facultative certificates are in the amount of $5,528,302.79, and purportedly represent R&Q Re's alleged share of payments attributed to Granite State and Lexington under the Settlement and certain expenses incurred.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Granite State and Lexington)

51.     R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "50," as if the same had been fully set forth herein at length.

52.     The Settlement amount includes payments that resolve exposure to and for bad faith and punitive damages which Ashland was seeking against Resolute and NICO, and possibly against certain AIG Insurers, including Granite State and Lexington, and Lloyd's.

53.     Upon information and belief, no portion of the Settlement was allocated to Resolute, even though it was Resolute's alleged bad faith conduct which was the focal point of Ashland's Kentucky 2012 state court litigation.

54.     Upon information and belief, no portion of the Settlement was allocated to NICO, even though it was NICO's alleged bad faith conduct which was the focal point of Ashland's Kentucky 2012 state court litigation.

55.     Upon information and belief, no portion of the Settlement payment was allocated

by Defendants to resolve their respective or collective bad faith exposure released in the Settlement.

56.     R&Q Re is presently without knowledge as to what portion of the Settlement was allocated to policies of insurance issued by Lloyd's.

57.     R&Q Re is presently without knowledge as to what portion of the Settlement was allocated to bad faith conduct attributable to Lloyd's.

58.     To the best of R&Q Re's knowledge, no portion of the Settlement allocated to AIG Insurers was classified as bad faith.

59.     R&Q verily believes, and on that basis alleges, that a significant portion of the Settlement was paid to resolve allegations of bad faith, tortious interference with the CIPs, bad faith breach of the CIP and to resolve claims for punitive damages which Ashland was seeking against Resolute and NICO, and possibly against AIG Insurers, including Granite State and Lexington, and Lloyd's.

60.     The facultative certificates issued by INA Re to Granite State and Lexington do not provide coverage for bad faith damages or punitive damages.

61.     The excess liability policies issued by Granite State and Lexington were improperly charged for amounts classified as loss or expense which, are believed to have been paid as bad faith or punitive damages that are not covered by those policies.

62.     As a result of improperly and unreasonably characterizing or treating as loss or expense amounts which were actually paid as and for a bad faith or punitive damage exposure, INA Re's facultative certificates were billed in an unreasonable and excessive amount.

63.     R&Q Re is presently unaware as to whether Granite State and/or Lexington performed or participated in the allocation of settlement dollars to policies issued by AIG

Insurers, including the policies issued by Granite State and Lexington.

64.    If Granite State and/or Lexington did not make the determination as to what portion of the Settlement was to be charged or allocated to its policies but blindly ratified and/or acquiesced in them, then R&Q Re is not bound by any allocation determination which may have been made.

65.    If Granite State and/or Lexington did make allocation determinations or participated in the allocation determinations or otherwise ratified or acquiesced in them, then to the extent that such determinations were made without assigning any portion of the Settlement to bad faith or punitive damages, said allocation is wrongful, improper, and unreasonable.

66.    The facultative certificates issued by INA Re are contracts of indemnity, requiring INA Re to indemnify Granite State and Lexington against losses which Granite State and Lexington are legally obligated to pay under their policies reinsured by INA Re, in excess of any agreed retention stated in the facultative certificates.

67.    Granite State and Lexington owed and continue to owe a duty of utmost good faith to INA Re under the facultative certificates.

68.    Granite State and Lexington owed and continue to owe a duty of utmost good faith to INA Re pursuant to accepted reinsurance industry custom and practice.

69.    Granite State and Lexington have an implied covenant to act in good faith and engage in fair dealing toward INA Re under the facultative certificates.

70.    Granite State and Lexington breached the facultative certificates by permitting Resolute to bill R&Q Re for losses and expenses that Granite State and Lexington are not and would not have been legally obligated to pay under their excess liability policies reinsured by INA Re's facultative certificates because the payments were made to extinguish and resolve a

bad faith and/or punitive damage exposure.

71.     Granite State and Lexington breached the facultative certificates by permitting Resolute to bill R&Q Re for losses and expenses that Granite State and Lexington are not and would not have been legally obligated to pay under their excess liability policies reinsured by INA Re's facultative certificates had the Settlement been properly and reasonably allocated among Resolute, NICO, Lloyd's and AIG Insurers, and further, had Defendants properly and reasonably recognized and acknowledged that portion of the Settlement which was paid to extinguish and resolve a bad faith and/or punitive damage exposure.

72.     Granite State and Lexington breached their duty of utmost good faith by permitting Resolute to bill R&Q Re for losses and expenses that Granite State and Lexington are not and would not have been legally obligated to pay under their excess liability policies reinsured by INA Re's facultative certificates because the payments were made to extinguish and resolve a bad faith and/or punitive damage exposure.

73.     Granite State and Lexington breached their duty of utmost good faith by permitting Resolute to bill R&Q Re for losses and expenses that Granite State and Lexington are not and would not have been legally obligated to pay under their excess liability policies reinsured by INA Re's facultative certificates had the Settlement been reasonably allocated among Resolute, NICO, Lloyd's and AIG Insurers, and further, had Defendants properly and reasonably recognized and acknowledged that portion of the Settlement which was paid to resolve and extinguish a bad faith and/or punitive damage exposure.

74.     Granite State and Lexington breached their implied covenant of good faith and fair dealing owed to INA Re under the facultative certificates by permitting Resolute to bill R&Q Re for losses and expenses that Granite State and Lexington are not and would not have been

legally obligated to pay under their policies reinsured by INA Re's facultative certificates because the payments were made to resolve and extinguish a bad faith and/or punitive damage exposure.

75.     Granite State and Lexington breached their implied covenant of good faith and fair dealing owed to INA Re under the facultative certificates by permitting Resolute to bill R&Q Re for losses and expenses that are not and would not have been legally to obligated to pay under their excess liability policies reinsured by INA Re's facultative certificates had the Settlement been reasonably allocated among Resolute, NICO, Lloyd's and AIG Insurers, and further, had Defendants properly and reasonably recognized and acknowledged that portion of the Settlement which was paid to resolve and extinguish a bad faith and/or punitive damage exposure.

76.     Certain excess policies issued by Granite State and Lexington to Ashland and reinsured by R&Q Re which attach in excess of $51 million would not have been implicated by Ashland's asbestos losses had those losses been paid in accordance with the CIP between Ashland and AIG Insurers.

77.     All amounts allocated to the excess policies issued by Granite State and Lexington to Ashland and reinsured by R&Q Re which attach in excess of $51 million are amounts which were paid to extinguish and resolve the Defendants' bad faith and/or punitive damage exposure.

78.     All amounts paid pursuant to the Settlement which were allocated to the Granite State and Lexington policies which attach in excess of $51 million and are reinsured by INA Re's facultative certificates have been wrongfully, improperly and unreasonably implicated in the Settlement by assigning Settlement dollars to those policies which were actually paid as consideration to resolve a bad faith liability and/or punitive damage exposure, neither of which is

covered by those excess policies and neither of which is reinsured by INA Re's facultative certificates.

79.     Had the bad faith and punitive damage component of the Settlement amount paid by Defendants been properly recognized and acknowledged, then the attachment point of certain Granite State and Lexington excess insurance policies attaching in excess of $51 million would not have been reached by Ashland asbestos losses or expenses associated with the handling of those losses.

80.     The wrongful, improper and unreasonable allocation to these higher attaching excess policies issued by Granite State and Lexington created loss to those policies which would not otherwise have existed and only exist by artificially characterizing as loss amounts which were paid in exchange for a release from bad faith and punitive damage liability.

81.     Upon information and belief, the Defendants, either acting alone or in concert with one another, made a conscious and strategic decision to treat all Settlement payments as losses covered by insurance policies issued by AIG Insurers, including Granite State and Lexington, rather than to avoid an uninsured and unreinsured punitive damage liability and bad faith exposure.

82.     Upon information and belief, the Defendants, acting alone or in concert with one another, made a conscious and strategic decision to treat all Settlement payments as losses covered by insurance policies issued by AIG Insurers, including Granite State and Lexington, for the purpose of artificially creating coverage when none existed and to avoid a bad faith and punitive damage exposure which Resolute and NICO would have had to pay as their uninsured and unreinsured share of the Settlement.

83.     R&Q Re has performed all of its proper obligations under the facultative

certificates.

84.    R&Q Re has been damaged by the Defendants' breach of contract, breach of

implied covenant of good faith and fair dealing and breach of the duty of utmost good faith in an

amount to be established at trial.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Declaratory Judgment against Granite State and Lexington)

85.    R&Q Re repeats, reiterates and realleges each and every allegation here and

above set forth at paragraphs "1" through "84," as if the same had been fully set forth herein at

length.

86.    R&Q Re seeks a judicial determination that its liability, if any, to Granite State

and Lexington under the facultative certificates is limited solely to loss and expense amounts that

are actually or arguably covered and which were reasonably, properly, and in good faith,

allocated to the Granite State and Lexington policies that are reinsured by INA Re's facultative

certificates.

87.    R&Q Re seeks a determination that its liability, if any, to Granite State and

Lexington under the facultative certificates should be fixed in an amount which excludes that

portion of the billings which reasonably, properly and in good faith should have been recognized

and acknowledged as payments made for an uninsured and unreinsured bad faith exposure and

liability for punitive damages.

88.    No prior request for the relief herein sought has been made in this or any other

Court.

89.    R&Q Re has no adequate remedy at law.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Breach of Contract Against Granite State and Lexington)

90.     R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "89," as if the same had been fully set forth herein at length.

91.     Granite State owed a duty to R&Q Re to handle claims in a responsible and professional manner.

92.     Lexington owed a duty to R&Q Re to handle claims in a responsible and professional manner.

93.     To the extent that the underlying insurers were handling the claims, Granite State owed a duty to R&Q Re to ensure that the underlying insurers were handling the claims in a responsible and professional manner.

94.     To the extent that the underlying insurers were handling the claims, Lexington had a duty to ensure that the underlying insurers were handling the claims in a responsible and professional manner.

95.     Granite State delegated its claim handling function and authority to Resolute.

96.     Lexington delegated its claim handling function and authority to Resolute.

97.     Granite State delegated the administration of the CIP between Ashland and AIG Insurers to Resolute.

98.     Lexington delegated the administration of the CIP between Ashland and AIG Insurers to Resolute.

99.     Granite State permitted other AIG Insurers or NICO to delegate to Resolute the administration of the CIP between Ashland and AIG Insurers.

100.    Lexington permitted other AIG Insurers or NICO to delegate to Resolute the administration of the CIP between Ashland and AIG Insurers.

101.    Pursuant to the facultative certificates, Granite State owed a duty to INA Re to properly discharge the claim function in a reasonable and businesslike manner.

102.    Pursuant to the facultative certificates, Lexington owed a duty to INA Re to properly discharge the claim function in a reasonable and businesslike manner.

103.    To the extent that Granite State delegated to Resolute the administration of the claim handling function, including the continuing administration of the CIP, Granite State owed a duty to INA Re to ensure that the claim handling function and administration of the CIP were performed in a reasonable, professional and businesslike manner, and consistent with the manner in which AIG Insurers had administered the CIP prior to the delegation to Resolute.

104.    To the extent that Granite State permitted others to delegate to Resolute the administration of the claim handling function, including the continuing administration of the CIP, Granite State owed a duty to INA Re to ensure that the claim handling function and administration of the CIP were performed in a reasonable, professional and businesslike manner, and consistent with the manner in which AIG Insurers had administered the CIP prior to the delegation to Resolute.

105.    To the extent that Lexington delegated to Resolute the administration of the claim handling function, including the continuing administration of the CIP, Lexington owed a duty to INA Re to ensure that the claim handling function and administration of the CIP were performed in a reasonable, professional and businesslike manner, and consistent with the manner in which AIG Insurers had administered the CIP prior to the delegation to Resolute.

106.    To the extent that Lexington permitted others to delegate to Resolute the administration of the claim handling function, including the continuing administration of the CIP, Lexington owed a duty to INA Re to ensure that the claim handling function and

administration of the CIP were performed in a reasonable, professional and businesslike manner, and consistent with the manner in which AIG Insurers had administered the CIP prior to the delegation to Resolute.

107.    Granite State did not request or receive the consent of either INA Re or R&Q Re to delegate the claim handling function or the administration of the CIP to Resolute.

108.    Lexington did not request or receive the consent of either INA Re or R&Q Re to delegate the claim handling function or the administration of the CIP to Resolute.

109.    Resolute engaged in negligent, reckless and/or bad faith claims handling, including but not limited to its continuing administration of the CIP between Ashland and AIG Insurers.

110.    Granite State took no steps to prevent or guard against Resolute's negligence, recklessness and/or bad faith in its continuing administration of the CIP between Ashland and AIG Insurers.

111.    Lexington took no steps to prevent or guard against Resolute's negligence, recklessness and/or bad faith in its continuing administration of the CIP between Ashland and AIG Insurers.

112.    Granite State breached the facultative certificates by permitting the claim handling function, including but not limited to the continuing administration of CIP between Ashland and AIG Insurers to be administered in a negligent, reckless and bad faith manner, and inconsistent with the manner in which the CIP had been administered prior to delegating administration to Resolute.

113.    Lexington  breached the facultative certificates by permitting the claim handling function, including but not limited to the continuing administration of CIP between Ashland and

AIG Insurers to be administered in a negligent, reckless and bad faith manner, and inconsistent with the manner in which the CIP had been administered prior to delegating administration to Resolute.

114.   Granite State and Lexington did nothing to prevent, but instead permitted such negligent, reckless and bad faith claims handling to continue, with knowledge that Resolute was taking coverage positions which were in violation of the CIP and which were inconsistent with positions that AIG Insurers had previously taken when entering into the CIP and when administering claims under the CIP.

115.   AIG Insurers, including Granite State and Lexington, knew and had reason to know that the coverage positions that Resolute was taking were inconsistent with positions that AIG Insurers had agreed to take at the time that it entered into the CIP and during the time that AIG Insurers administered the CIP.

116.   Resolute's negligent, reckless and bad faith claims handling, including its continuing administration of the CIP between Ashland and AIG Insurers, resulted in an increased liability and exposure to the Granite State and Lexington policies being reinsured by R&Q Re.

117.   AIG Insurers, including Granite State and Lexington, ratified Resolute's bad faith, as a result of its failure to intervene and remedy same and/or by its failure to oversee and supervise the continuing administration of the CIP by Resolute.

118.   R&Q Re's increased liability and exposure is the increased amount payable under the Settlement above and beyond amounts that R&Q Re would have been obligated to pay as its share of indemnity for payments that Granite State and Lexington would have paid under the CIP had it remained in effect.

119. The reason why the CIP did not remain in effect is because of the bad faith conduct on the part of Resolute and/or NICO and the failure of AIG Insurers to prevent such bad faith conduct through oversight and supervision.

120. R&Q Re has performed all of its proper obligations under the facultative certificates.

121. R&Q Re has sustained damages that are presently incapable of determination, but will be established at trial.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Tortious Interference With Contract Rights Against Resolute and NICO)

122. R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "121," as if the same had been fully set forth herein at length.

123. INA Re reinsured Granite State policy numbers 6179-1049, 6481-52 and 6180-1940 respectively under Certificates of Facultative Reinsurance numbers FRC 025234, FRC 033896 and FRC 028075. INA Re reinsured Lexington policy numbers 5511412, 5520262 and 033895 respectively under Certificates of Facultative Reinsurance numbers FRC 024658, FRC 029387 and FRC 033895.

124. Resolute and NICO knew that the above-referenced Granite State and Lexington excess policies were reinsured by the above-referenced facultative certificates issued by INA Re.

125. Granite State and Lexington had an ongoing duty under the facultative certificates and the CIP to administer claims made under their respective excess policies in a reasonable, professional and businesslike manner, and in good faith.

126. After the LPT was consummated, Resolute and NICO, monitored and administered claims under the CIP applicable to policies issued by AIG Insurers including the

Granite State and Lexington excess policies in a negligent, reckless and bad faith manner and delayed payment to Ashland.

127.    Resolute and NICO exercised complete domination and control over AIG Insurers, including Granite State and Lexington, in the administration of the CIP.

128.    Granite State and Lexington were caused and encouraged to acquiesce in the manner in which Resolute and NICO were administering the CIP.

129.    Granite State and Lexington were caused and encouraged to acquiesce in Resolute's billing of R&Q Re's facultative certificates in excessive amounts.

130.    Granite State and Lexington were caused and encouraged to acquiesce in Resolute's billing of R&Q Re's facultative certificates in excessive amounts even though Granite State and Lexington knew Resolute's billing to be excessive and improper.

131.    Resolute's and NICO's negligent, reckless and bad faith actions in administering claims on behalf of Granite State and Lexington has resulted in billings to R&Q Re to the facultative certificates that are not covered by the excess liability policies that they reinsure and R&Q Re has sustained damage thereby.

132.    R&Q Re's facultative certificates would not have been billed for such excessive amounts had it not been for Resolute and NICO's negligent, reckless and bad faith administration of the CIP.

133.    Resolute and NICO intentionally caused and encouraged AIG Insurers, including Granite State and Lexington, to breach their duties of utmost good faith and their non-delegable duty owed to R&Q Re under the facultative certificates to administer claims subject to R&Q Re's reinsurance in good faith and in a reasonable, professional and businesslike manner.

134.    Had it not been for the actions and conduct of Resolute and NICO, AIG Insurers, including Granite State and Lexington, would have continued to perform as they had performed under the CIP, in which event, R&Q Re's facultative certificates would not have been billed for excessive and improper amounts.

135.    To the extent that R&Q Re is compelled to pay all or some portion of the excessive billings to the facultative certificates, R&Q Re will have sustained damage.

136.    By reason of Resolute's and NICO's intentional conduct, R&Q Re has been required to secure a judicial declaration of rights against Granite State and Lexington to declare as excessive and improper amounts billed to the facultative certificates.

137.    The damages that R&Q Re has sustained, is sustaining and will in the future sustain are presently incapable of determination, but will be established at trial.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Breach of Contract/Acceleration of Liability Against Granite State and Lexington)

138.    R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "137," as if the same had been fully set forth herein at length.

139.    The Settlement increased amounts that Granite State would otherwise have been required to pay under CIP between Ashland and AIG Insurers.

140.    The Settlement increased amounts that Lexington would otherwise have been required to pay under CIP between Ashland and AIG Insurers.

141.    The CIP between Ashland and AIG Insurers was scrapped and replaced by the Settlement solely by reason of the bad faith conduct of the Defendants in the administration of the CIP.

142.    In the absence of such bad faith conduct, the CIP would have continued to be administered as it was prior to the delegation of the administration of the CIP to Resolute.

143.    The Settlement also had the effect of accelerating or advancing future potential liabilities of AIG Insurers, including Granite State and Lexington, and requiring AIG Insurers including Granite State and Lexington, to make an immediate payment of liabilities that would not have emerged until later in time, or perhaps may never have emerged.

144.    To the extent that the Settlement, or any portion thereof, is binding upon R&Q Re, and R&Q Re is obligated to pay amounts to Granite State and Lexington under the facultative certificates, then R&Q Re's payment liability should be reduced to the extent that billings are in respect of amounts which Granite State and Lexington does not have a legal liability to pay now under its excess liability policies.

145.    The Settlement had the effect of creating a present liability on the part of Granite State and Lexington to pay amounts that would not become payable, if at all, until various points in time in the future.

146.    R&Q Re has sustained damage as a result of the wrongful and improper acceleration of its alleged liability.

147.    The damages that R&Q Re has sustained are presently incapable of determination, but will be established at trial.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment Against Granite State)

148.    R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "147," as if the same had been fully set forth herein at length.

149.    R&Q Re has been billed for its alleged share of amounts that Granite State

allegedly paid to Ashland's coverage attorneys.

150.     The amounts which Granite State may have paid to Ashland's coverage attorneys are not covered under the excess liability policies issued by Granite State.

151.     The facultative certificates issued by INA Re follow form to the coverage provided by the Granite State policies subject to the terms and conditions of the certificates.

152.     Because the amounts that Granite State allegedly paid to Ashland's coverage attorneys are not covered under the Granite State excess liability policies, they are not covered by the INA Re facultative certificates reinsuring those policies.

153.     Granite State either voluntarily or gratuitously paid those amounts to Ashland's coverage attorneys, or did so because of a concern that it would be compelled to do so by reason of the bad faith of the Defendants in the administration of the CIP after its administration was delegated to Resolute.

154.     The facultative certificates issued by INA Re do not provide coverage to Granite State for bad faith liability and damages, or expenses associated or incurred in connection therewith.

155.     The amounts paid to an insured's coverage counsel do not constitute expenses paid by an insurer in the investigation and settlement of claims and suits, and are not covered by INA Re's facultative certificates issued to Granite State.

156.     R&Q Re seeks a judicial determination that R&Q Re has no obligation to indemnify Granite State under INA Re's facultative certificates for amounts paid to Ashland's coverage attorneys.

157.     R&Q Re has no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Declaratory Judgment Against Granite State)

158.     R&Q Re repeats, reiterates and realleges each and every allegation here and above set forth at paragraphs "1" through "157," as if the same had been fully set forth herein at length.

159.     R&Q Re has been billed for Granite State's alleged share of expenses that Granite State allegedly paid as attorneys' fees to defend an arbitration commenced by Ashland against AIG Insurers.

160.     Granite State incurred these fees because Ashland was contending that Granite State had either, permitted, engaged in or ratified bad faith conduct to breach the CIP.

161.     Granite State would not have been required to incur any such attorneys' fees had it not delegated the administration of the CIP to Resolute and had it not permitted and ratified Resolute's bad faith conduct.

162.     Granite State would not have been required to incur any such attorneys' fees had it continued to pay losses and expenses in accordance with the CIP.

163.     Upon information and belief, the attorneys' fees that Granite State allegedly incurred in connection with the arbitration were paid, in whole or in part, to defend itself against claims of bad faith.

164.     Because bad faith claims are not covered by INA Re's facultative certificates, amounts paid to defend against such bad faith claims, similarly, are not covered by the facultative certificates.

165.     R&Q Re seeks a judicial declaration that it has no obligation to indemnify Granite State for expenses that Granite State incurred solely because of its delegation to Resolute of claim handling authority, including the continuing administration of the CIP, which it failed to

prevent and/or ratified.

166.    R&Q Re seeks a judicial determination that it has no obligation to indemnify Granite State for expenses incurred to defend bad faith claims.

167.    R&Q Re seeks a judicial determination that it has no obligation to indemnify Granite State for expenses incurred in connection with the arbitration between Ashland and AIG Insurers.

168.    R&Q Re has no adequate remedy at law.

WHEREFORE, R&Q Reinsurance Company respectfully demands Judgment as follows:

1.    On the first claim for relief, for damages in an amount to be established at trial;

2.    On the second claim for relief, for a judicial declaration that,

    (a)    R&Q Re's liability, if any, is limited solely to loss and expense amounts that are actually or arguably covered and which were reasonably, properly, and in good faith, allocated to the Granite State and Lexington policies that are reinsured by INA Re's facultative certificates, and

    (b)    R&Q Re's liability, if any, should be fixed in an amount which excludes that portion of the billings which reasonably, properly and in good faith should have been recognized and acknowledged as payments made for uninsured and unreinsured bad faith and punitive damages.

3.    On the third claim for relief, for damages in an amount to be established at trial.

4.    On the fourth claim for relief, for compensatory and consequential damages in an amount to be established at trial.

5.    On the fifth claim for relief, for damages in an amount to be established at trial.

6.    On the sixth claim for relief, for a judicial declaration that R&Q Re has no

obligation to indemnify Granite State under INA Re's facultative certificates for amounts paid to Ashland's coverage attorneys.

7.   On the seventh claim for relief, for a judicial declaration that,

(a)   it has no obligation to indemnify Granite State for expenses that Granite State incurred solely because of Granite State's delegation to Resolute of claim handling authority, including the continuing administration of the CIP, which Granite State failed to prevent and/or ratified, and

(b)   it has no obligation to indemnify Granite State for expenses incurred to defend bad faith claims, and

(c)   it has no obligation to indemnify Granite State for expenses incurred in connection with the arbitration between Ashland and AIG Insurers.

8.   And on all claims for relief, costs and disbursements incurred in connection with the prosecution of this action, together with reasonable attorneys' fees, and for such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
         January 19, 2016

                                   RUBIN, FIORELLA & FRIEDMAN LLP

                      By:   _Bruce Friedman_____
                            Bruce M. Friedman
                            (A Member of the Firm)
                            Attorneys for Plaintiff
                            R&Q Reinsurance Company
                            630 Third Avenue, 3rd Floor
                            New York, New York 10017
                            Ph:   (212) 953-2381
                            Fax:  (212) 953-2462
                            Our File No. 908.30677
                            bfriedman@rubinfiorella.com